May it please the Court, Aaron Clefton for Plaintiff Appellant Matthew Scott. I'd like to reserve five minutes of my time. I'd like to thank the Court for allowing us to have a hearing today. This case is narrowly about the Court's decision below to narrow whether a plaintiff can succeed on a plaintiff's motion for a plenary injunction on the basis of whether intentionality is an element within the ADA. And then broadly it touches upon several different aspects of the regulations involved with ADA Title II discrimination cases, including the general discrimination regulations as well as the specific ones about what happens when a facility is altered. If the Court were to find as a threshold matter that there was a failure to apply the proper standard and that the lower court incorrectly applied this intent requirement or element, would it be helpful for us to, well, wouldn't it make more sense for us to just remand so that a full record could be developed versus wrestle with some of these other issues, particular ones of a first impression? Yes, Your Honor. I think remand is appropriate. If Your Honors would like to give instructions about the other underlying issues, and given the departure, I would say, of the District Court from what has been clear law for a long time, touching on the aspects of whether a plaintiff is likely to prevail in the court below for the reasons given could be a thing Your Honors decide to do. But Your Honor is correct, like you all could decide just to remand and get a full record on the case below. Do you believe we have a sufficient record to address these various theories that you offer as to why the City of Los Angeles was required to leave these single-use restrooms unlocked? Yes, Your Honor, because there's undisputed facts about what happened, the policy involved in locking the restrooms. There's no further record as to the only thing that would need more sussing out would be the issues regarding security, which because the court didn't get to the further elements of a preliminary injunction, there's no way to know what the court below was thinking in terms of factual findings. On the other hand, the record is very clear. The videos that we've submitted, the policies that the defendant and appellees have provided show that there's no question about what is happening in the case. It's just a question of those other elements not being decided by the court below. All right, so let's address then the other issues before us. Okay, sure. So I would say, first of all, I want to touch on the Loper-Bright issue that was an intermediate decision that may or may not affect the case. We believe it does not affect the case for a very specific reason. Title II, Congress specifically mandated that the Department of Justice do the regulations for it. There's numerous Supreme Court authority as well as district, I mean appellate court authority on what happens when an act like the ADA, which was itself an affirmation of previous Rehab Act regulations, and then subsequently the 2008 ADA Amendments Act is then a reaffirmation of the regulations of the ADA that basically Congress is adopting the regulations and interpretation that the DOJ presents through that process of passing that legislation. Specifically, if you look at U.S. v. Board of Commissioners of Sheffield, it says that when Congress then reenacts a statute, voices its approval of an administrative order or other interpretation thereof, Congress is treated as having adopted that interpretation. The Third Circuit applied this reasoning in Helen L. v. DiDario regarding the Rehab Act regulations. Olmstead v. X.R.L. Zimring was a Supreme Court case that talked about why the Chevron was not implicated in the regulations and interpretations thereof. And finally, Shotz v. City of Planston, Florida in the Eleventh Circuit, that Congress expressly authorized the Attorney General to make rules within the force of law interpreting and implementing the ADA provisions applicable to public entities. The DOJ issued its rules contemporaneously with implementation thereof and have controlling weight. So let's talk about the actual regulations themselves.  So first, 28 C.F.R. 35130B.3.2. This is about the methods, administration, or purpose and effect of defeating or substantially impairing accomplishments of the objectives of a public entity's program with respect to the individual's disabilities. This is the key regulation that is simply dismissed in this case and should fall in plaintiff's favor. The intention of LAX and defendant to create a unisex family all-gender restroom and have it be accessible is a clear statement of the objective of its program with respect to people with disabilities. Locking that door is clearly substantially impairing that objective. It makes no sense to have millions of dollars spent on a renovation and supporting the restrooms that are serving that area of alteration and then lock them away. When there's alternatives to securing that kind of, like if there were security issues, for instance, they're common across all private spaces that are publicly offered. So any restroom that's going to be offered to the public is going to be implicated for security. And they're not unique to just that one restroom. However, what is unique is that defeating that purpose, defeating that objective for people with disabilities is itself defined as discrimination. So clearly there was an ADA-compliant bathroom that was available, that was accessible near the single-use restrooms? There is. However, it does not have an adjacent sink. So the family restrooms are one compartment, one room, essentially, and it has an adjacent sink, whereas the same-sex. So they're different, but at the same time, the multi-use restrooms are ADA-compliant? Yes. So to the extent that those exist, why, in this case, do you believe that the law would require the single-use to be not only in existence, which it does, it is in existence, it's available, and it requires somebody to find a janitor or find somebody to let them in? Yes, Your Honor. But unlocked? Yes, Your Honor. So for the same reason that this court decided that it was improper to, in Rody v. Bonta, to keep a hospital open that would serve both disabled and non-disabled people, but primarily disabled people, that it was improper that would disproportionately impact those who were being served by that hospital, so too in this case. If you're going to offer the family restroom, it has to be made accessible and has to be made available. The DOJ interpretation of the maintenance statute, so let's go to another regulation here, is 28 CFR 133A, requires that features of facilities and equipment be maintained and be made available, and the DOJ interpretation of that, which we think has been ratified by Congress because of the 2008 ADA Amendment Act, specifically says that during business hours, accessible entrances and accessible routes should be required to be unlocked. And that also was the finding of the district court in Arroyo v. Gage Bowl in the Title III context as well. In fact, what you're talking about is an accessible route, and there's no question that this single-use bathroom was accessible. You could get there. The only question was entering it, correct? Not quite, Your Honor. So the regulations are very clear that the path of travel, what is defined as path of travel, is two things at once. It's both the physical route you're describing, Your Honor, but it's also statutorily defined as the restrooms serving the area of alteration. So when you're talking about maintaining the path of travel statutorily and regulatory-wise, you're talking about ensuring that the restrooms are still serving that area of alteration. So in a sense, like even though there are some bathrooms available, and let's set aside the disparate impact side of things for a second. It's just when we look at the general prohibition against discrimination, the 35.130B32, we're talking about the ways in which the public entity puts forward its goals or its various actions towards the public and the people with disabilities they're in. So if it has these special accommodations, these ADA-accessible family restrooms, they need to be maintained, they need to be left unlocked, because to do otherwise is to defeat the purpose of their goal. Can it be argued that the airport is making a judgment? I mean, they've said we lock these because homeless people go in and lock themselves in for periods of time and cause damage or whatever. So in that scenario, they're not accessible to people who might need them who have disabilities because somebody's got themselves locked in there, and so the airport makes this judgment of we're going to solve that lack of access problem by preventing that from happening, locking the door, and making sure that people who actually need them go in. So why isn't that them trying to serve the accessibility goal? Yes, Your Honor. So I think if that were the only fact in the record below, that would make sense, but the fact is there are other things that have happened in the multi-stall, single-sex restrooms that if that logic were followed, all the restrooms would be closed because the fire was set in the multi-stall restrooms. There was no response to sort of stop or to enhance accessibility by closing those and keeping the others open. So there's a logical sort of slippage that happens, I think, when we're talking about what the security response is to these various sort of access, sort of what available access there is. So to Your Honor's point, if there are other ways to sort of solve homelessness, it shouldn't be on the backs, on the rights of disabled people. And so, for instance, it's not in the record, and we could go to the court below and argue it, but if their concern was you lock yourself in and you can't get into that restroom and nobody can see in there, you could just remove the bottom half of the door, just like you have in the multi-stall restrooms. You have a way to look in and see if somebody has locked themselves in and take appropriate action because of that. Nothing stops a disabled person or a homeless person, excuse me, from going into a multi-stall restroom and camping out there either. Homelessness is not an issue that should be exclusively sort of burdened to be solved based on the burden to disabled people. It should be something that our society sort of just has to deal with in a separate manner that still respects the laws that have been longstanding. And I'm going to take you over your time, so I will give you some time for rebuttal. Circling back to your original argument that the district court applied the wrong standards. So under Title II, there's a causation requirement, right? So we have to show the person was excluded from services because of their disability. And the district court's order is not fulsome. Not a lot for us to figure out what the basis of the decision was, but it seems that the district court may have been saying that it was a causation problem, not an intentionality problem. So you agree that you would have to show causation, and then you'd have to show causation for the injunctive relief as well. Is that correct? I think the causation is linked to the regulatory requirements. So when you look at the second element of an ADA claim under Chandler versus this is excluded for participation in or otherwise discriminated against with regard to public entities, services, programs, or activities, that otherwise discriminated against is defined by the regulations. So when you look at the regulations, if there are violations of them, then you're going to have a cause. That's the cause of the discrimination. Thank you. Thank you. All right, so I'm sorry. How much time did you request? Was it two? Five minutes, but it's okay. Okay. I'll give you three, okay? Thank you. Good morning, Your Honors. It pleases the Court. Rodolfo Ruiz on behalf of the City of Los Angeles, which includes Los Angeles World Airports. Your Honor, I'd like to start by clarifying some of the record that I believe was perhaps misstated. In terms of the purpose of these single-user restrooms, and it can be found in excerpts of Record 134, quote, this room shall serve and accommodate passengers traveling with companions, passengers traveling with the opposite sex, and passengers traveling with children. It's not something that was intended to be dedicated for the disabled particularly. Wouldn't that be problematic, though? I mean, it should be accessible equally to disabled people versus others. Correct, Your Honor. But to the extent that Appellant is trying to say that this was something that was specific for the disabled, that was not provided by the multi-user bathrooms, that's simply incorrect. The intent behind this is simply to provide privacy for types of traveling situations. But in terms of the city's obligations to provide ADA-compliant restrooms, certainly they both have to be, or at least one has to be, and that's covered with the ADA. And let me direct the same threshold question to you that I did to opposing counsel. Yes, Your Honor. To the extent that the lower court applied this intent requirement, which doesn't exist, do you agree with that? Not for a disparate impact case. I don't think the court has to remand this because I think the record is clear and I don't have to cite to Your Honors the multiple cases that the court is free to affirm on any other grounds that are apparent from the record and certainly arguments made by the city. But secondarily, I also think it's apparent to me, humbly to me at least from what the district court did, Your Honor, that it was a discussion about meaningful access. If the court looks at the district court's opinion, it's talking about meaningful access as provided by the multi-user bathrooms. There's never really any discussion by the district court about what was the intent here by the city in doing anything. Well, that's because the court found that there was no evidence of intent, correct? Yes. But the facts reference dealt with meaningful access, which is precisely what is covered in the disparate treatment cases. In your view, is there sufficient evidence in the record? Is it fulsome enough to be able to decide the case with respect to your alternative theories? Yes, it is because appellate's counsel just now said that there really are no disputes about what's occurring here. The reasoning provided by Mr. Iley, which is in the record, is not only the issues with the unhoused, but there are serious security concerns. There was a knife found in one of those restrooms, a single-user restroom, Your Honor. There was a fire set. There was an instance where someone, I don't think it matters if it happened to be an unhoused person, there was someone who had stolen baggage and was going through it while it was  The difference between the multi-user and the single-user, obviously, is you can lock the single-user. In essence, it's a stall. One thing I also wanted to point out before I forget, Your Honor, in the record and the videos submitted to the district court, and I want to direct the court's attention to videos marked as 1 and 11, and it's tied to the excerpt of record 151. These things are not adjacent. If you look at the videos, appellant would have to get out of the wheelchair and then walk or somehow ambulate, obviously he could not walk, but ambulate to the sink. And if that requires, I mean, you have to get off the toilet and then ambulate with the wheelchair. It's the same exposure to microbes and germs when you're touching the wheelchair and going through an area of the restroom that's traveled by others. So there is nothing in this record, no medical opinion, no doctor's note, no evidence about others suffering from infections or this problem. It's simply a layperson who's interested, obviously the appellant, saying that he has this fear, and that's not enough to establish that there's any need for an accommodation, nor was that a theory he was seeking. So the statements that this was somehow created for the disabled and that there is an adjacency next to the toilet, it's erroneous, Your Honor. I've directed the court to the record. But there is certainly enough here to affirm the court, the district court, on multiple grounds. There's simply no chance of success. They haven't demonstrated the likelihood of succeeding on the merits, and it's a heightened standard here since this is a mandatory injunction here. Compelling. They're requesting that the airport leave these doors open at all times, despite all the security concerns. There was no meaningful access denied. And I think the question asked earlier about were the multi-user restrooms ADA compliant, I think that's critical. So the meaningful access is there. What's your view of the Arroyo case that was cited by opposing counsel? Your Honor, I think if we had, like the Arroyo case, Your Honor, that could not be entered and accessed by a wheelchair because it was not ADA compliant, like the Arroyo case, if the airport had these multi-user restrooms that didn't have the bars to be able to allow people who were disabled in wheelchairs to get into a toilet, and then no signage, we had signage, the airport did, no signage directing a disabled person as to what they should do when they're encountering a multi-user restroom that is not accessible, and then no way to open it because it's always locked, then yes, there would be grounds there potentially for an injunction. That is not our case. But just later in the Arroyo, you found it didn't matter whether or not there were these other accommodations. What mattered is that this unisex restroom was kept locked, correct? Yes, and that there was no access. I think it's distinguishable because obviously we had an accessible restroom that was ADA compliant. Secondarily, we had a system also that if someone, disabled or non-disabled alike, wanted to use a single-user restroom, they could make a request. Could you address the DOJ regulations addressing this issue? And, Your Honor, if it's at all important, we'd request an opportunity to brief the Loper case, but I think Loper makes clear that this court is, or courts in general, Your Honor, under the APA simply apply rules of statutory construction, and I think the TAM is not something that you would refer to. I know there was case law cited to you about maybe certain circumstances where there could be instances where DOJ regulations, because they're highly informed and lots of experience, but none of those things have been established in this record. So I respond to the idea that Congress, in enacting Title II, mandated DOJ to create these regulations, and that given that mandate that we should give them express weight. I think the regulations themselves certainly can be looked at, but the technical manual, no, under Loper. But in terms of the regulations being cited by appellant, they're dealing with access? And access here was there for all the arguments I've already made about the multi-user, but also, and, Your Honor, I actually had. Sorry, there's just a little paper. But, Your Honor, in terms of the actual part that's being referenced, it's, from my memory, that particular section that says accessible doors must be unlocked when the public entity is open for business. Correct, Your Honor. And that is in the area, I think there's a heading called routes, or it's about routes and related to maintenance. People could, there's no blockage to the single user, and I think it's not specifically saying, to me, for that to make sense in terms of the context of businesses, because you could have problems where the usage of restrooms is denied because people are in there locking them so much. If you have a system whereby you can make sure people can get in there, but it's not being misused, then I think, in essence, it is being, it's ensuring access. So, one, I don't think that regulation is really applicable to this situation. And, two, even if the court did consider that that regulation has application here, I think the way the airport was doing this, it was actually enhancing access to prevent people from just camping out and denying access to people who really needed to use the restroom. And, third, the public safety component still is an override, even if the court thought that those sorts of things were not persuasive, the previous arguments, because at a certain point, I mean, at what point does, obviously, Los Angeles International Airport, it's a known concern for multiple law enforcement agencies, Your Honor, in terms of prevention of crime, terrorist activity. If there are violent crimes and thefts happening every day, would it then be allowed to lock those restrooms? So, as to ensure that wasn't happening and to ensure access, at a certain point, I don't think, I think it would have to be acknowledged, and I think we've shown enough in terms of the legitimate concerns that, in an airport like Los Angeles International Airport, you can't wait for things to deteriorate. It was bad enough. It was a reasonable step, and there was meaningful access to a multi-user restroom. So I think the district court got it right. From reading that opinion, I just feel like the word intentionality was not trying to, either it was just a poor choice of words or it was referring to intentionality in the sense of, does this affect a denial, somehow, of access? Does the district court rely upon this public safety consideration in its determination? Your Honor, I'm not that long of an order, and I can just quickly take a look. And I guess to the extent that it didn't, at this point, would we benefit from some fact-finding by the lower court? Certainly, well, I would say the record on past incidents is already here. It's in the record, but it wasn't cited by the district court. No, that's correct, Your Honor. Correct. So if the court wanted to affirm on a different ground, it would rely on the authority that there's sufficient record here to affirm on other grounds with that case law that I don't need to repeat to Your Honors. And I believe it would be appropriate, given that, one, it's appropriate because it's apparent from the record, and, two, appellate counsels, just hearing oral arguments seems to concede at that point that the record is fully developed in this case. I suppose, perhaps, you would hire experts to talk about terrorist threats and criminal activity potentially at our courts, but I'm not sure. Well, at this point, I'm not so concerned about the state of the record versus what the district court did with that record. I don't think the district court really entered into that analysis to answer the court's question. I think the district court talked about the elements for the heightened standard for a preliminary injunction to be entered against the city of Los Angeles and then focused on likelihood of prevailing on the merits and concluding there is meaningful access here. So you're not going to prevail on that basis. I don't recall. So I think that, to answer the court's question, I think that is what the court did, but I think the court here is free to affirm on the additional grounds. On the other elements, there really was no showing at the district court balancing of the equities, those other elements, nor was there much argument here. So, I mean, I think it's essentially conceded, and the court can affirm on those grounds alone. With regards to cutting open or cutting off half of the bathroom door for the single-user stall, that's completely unworkable. It's a single-user stall, so it's sort of like its own. I mean, it's a single-user restroom, so it's sort of like its own stall, and you're talking about no privacy then for people who are handling their business, and there's literally tens of thousands of people walking by those areas every day. That's just simply not workable or serious. And the reason you wouldn't walk, no one's talking about locking the multi-user restrooms because they don't need to be locked. They're multi-user. So if anyone is trying to, like, set fires or steal from baggage that they've stolen and rummaging through it or sneaking weapons or knives in there somehow, law enforcement can just go into the multi-user restroom. It's not locked. So I think all of those thought experiments by the appellant here in the argument, I don't think hold water. So for those reasons, unless the court has further questions, well, I do have 43 seconds, but— Actually, you're over. I'm sorry. When it starts going up, it means you've gone over. I'm sorry. All right. Thank you. Thank you so much. Thank you, Your Honors. I just want to respond to a few points. First, this idea that you can make a request for the restroom is nowhere in the record. But even if it were and that were the policy, we saw how that worked out in the videos for Plaintiff. He had a bodily functions accident because he, despite requesting many times to many different people, he was unable to get to the restroom in time. That simply is not meaningful access. So, too, you know, in the case of Tennessee v. Lane, it's sort of a famous Supreme Court case in which a person was denied access— Let me back up for one second. Sure. So as I understand it, your client proceeded to the LAX single-use restroom on, was it four or five occasions? Correct, Your Honor. And so on three of the occasions, while there was some sort of delay, it was brief enough that you don't really point to it as constituting a denial of any ADA rights. Is that correct? No, Your Honor, because we view the rights as being defined by the regulations. So violations of those regulations are themselves violations of the ADA. So even if the delay had been 15 seconds, in your view, that would be a violation of the ADA? Correct, because the regulations require that it be unlocked. I guess that's our position.  And so, yeah. So just to briefly, the example of Tennessee v. Lane, the disabled person had to crawl up courtroom steps in order to get to the court, and the Supreme Court found that was not meaningful access. To do a quick hypothetical about the maintenance issue and bring us back around to sort of why the maintenance regulation requires it be unlocked, is similar to sort of what if there had been equipment that had a lift for a person in a wheelchair, and the lift worked properly, but the key for it was removed and available in the courthouse so that somebody would have to climb up the steps ridiculously in order to access that lift. It's analogous to the situation. The maintenance requires that the key be there or at least the access be there. I think that the—so I would just suggest that also the point about, just to your Honor's point, about homelessness and like sort of the general fears around security, and of course those things were ever-present, but if you look carefully in the record, your Honors, the bathrooms were being locked before there was a knife, before there was a fire. Those things happened—they were already being locked without the sort of asking of the FAA disability coordinator. These things were already being done as a janitorial concern, a ministerial concern, not a securities concern. And were those things—was it already being locked? Well, I'm sorry. So when your client used it on four or five occasions, had any of these events involving the knife or the fires occurred? I don't believe so. I could be misremembering the fire, but that would happen in a multi-stall restroom, but certainly in the single-accommodation restroom, none of those security concerns had occurred. Thank you. I'll allow my time. Thank you, Your Honor, so much. Thank you. Counsel, thank you both for your arguments this morning. They were helpful. And we are adjourned. This case is submitted. All rise. This court for this session stands adjourned.
judges: BADE, FORREST, Curiel